Cynthia STROMILLO, Plaintiff,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC. and Frank Wilkens, Defendants.

71 Civ. 1259.

United States District Court, E. D. New York.

Dec. 29, 1971.

Milton S. Zeiberg, New York City, for plaintiff.

Brown, Wood, Fuller, Caldwell & Ivey, New York City, for defendants; Richard Conway Casey, New York City, of counsel.

MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

Defendants move, pursuant to Rules 9(b), 9(g) and 12(e) of the Federal Rules of Civil Procedure, to require plaintiff to more definitely state the various claims in the complaint. The motion must be denied.

## I.

The complaint alleges in essence that the defendants wrongfully "churned" her account, i. e., engaged in excessive stock transactions on her behalf principally to generate brokerage commissions for their own gain. Jurisdiction is premised upon the Securities and Exchange Act of 1934 and Rule 10b–5. 15 U.S.C. §§ 78f, 78j, 78s and 78aa; 17 C. F.R. 240.10b–5 (1969).

In considerable detail covering ten legal size pages, plaintiff states her grievances. She was a widow with cash in a savings bank and a dormant brokerage account consisting primarily of American Telephone and Telegraph stocks acquired over the years as an employee of that company. A short while ago the individual defendant, as an agent of his employee, the defendant Merrill Lynch, began, she avers, to churn her stocks. Despite the fact that he knew she was about to retire and was interested primarily in security and income, he induced her to withdraw substantially all of her accumulated savings and then engaged on her account in a series of transactions resulting in high brokerage fees and the loss of a large part of her capital.

Many of the trades are set out in detail and the damages sought are justified by specific figures. For example, the first claim for relief states that there were excess brokerage commissions in the amount of $10,924.50, unjustified margin loans and interest of $15,129.98 and dividend losses in the amount of $13,171.34. In the second claim for relief specific transactions are described showing losses in value due to changes in investment of $26,118.26.

## II.

A motion for a more definite statement is available only if "a pleading . . . is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed.R.Civ.P. 12(e). This complaint is quite definite and is unambiguous. An adequate answer should provide no challenge to defendants' attorneys.

Rule 9(b) requires "averments of fraud . . . [to] be stated with particularity." The statements in the complaint are particularized to the point that details of individual purchases and sales are described. Practically nothing is left to the imagination; the level of abstraction is as low as it is possible to get without erring on the side of verbosity. Moreover, the defendants have in their own records a complete statement of all trades in connection with the plaintiff's account giving further color to her allegations.

When "items of special damage are claimed, they shall be specifically stated," according to Rule 9(g). But it seems unlikely that plaintiff's are the kinds of special damages referred to in the Rules. See, e. g., 2A Moore's Federal Practice ¶ 9.08; Wright and Miller, Federal Practice and Procedure § 1310 (1969). In any event, the complaint is sufficiently specific with respect to the computation of damages. Wright and Miller, Federal Practice and Procedure §§ 1311–1312 (1969).

The tendency under the Federal Rules is to discourage motions to compel more definite complaints and to encourage the use of discovery procedures to apprise the parties of the basis for the claims made in the pleadings. See, e. g., United States v. Anchor Line, Ltd., 232 F.Supp. 379 (S.D.N.Y.1964); Sopkin v. Missouri Nat. Life Ins. Co., 222 F.Supp. 984 (W.D.Mo.1963); Hamilton v. Baltimore & O. R. R. Co., 23 F.R.D. 101 (S. D.Ind.1958); Petrikin v. Chicago, R. I. & P. R. Co., 14 F.R.D. 31 (W.D.Mo. 1953); McKinzie v. Springfield City Water Co., 14 F.R.D. 503 (W.D.Mo. 1953). As the bench and bar were told some time ago,

"Particularization of the issues is indeed the first order of business. But the Rules do not contemplate their definition by paper pleadings. They are to be ascertained and articulated by the free use of controlled pretrial discovery under the guiding hand of the judge who has the responsibility for the trial of the case." New Home Appliance Center v. Thompson, 250 F.2d 881, 883–884 (10th Cir. 1957).

Apparently defendants are making no claim that a complaint based upon unnecessary trading by a broker fails to state a claim for relief. *See, e. g.,* Hecht v. Harris, Upham & Co., 283 F. Supp. 417 (N.D.Cal.1968). Accordingly, their reliance upon Shemtob v. Shearson, Hammill & Co., 448 F.2d 442 (2d Cir. 1971) and Matheson v. White, Weld & Co., 53 F.R.D. 450 (S.D.N.Y.1971), is misplaced. In those cases there was a serious question about whether a claim for relief had been stated under the Securities Acts; specificity was required rather than general allegations of fraud in order to show a federal jurisditional basis.

### III.

■ Particularly in view of the fact that the individual calendar system—providing for the assignment for all purposes to a specific judge of a case immediately after filing the complaint—is utilized in this District, generalized motions of this kind should be discouraged. As a distinguished committee of judges, scholars and lawyers recently observed in reviewing the successful trial of the individual calendar system on an experimental basis in the Southern District of New York, a significant advantage is that

"[m]otions, instead of being simply granted or denied, can give rise to a channeling of pretrial discovery to focus upon narrow issues in dispute. . . ." Committee on the Federal Courts of the Association of the Bar of the City of New York, Report on the Experimental Individual Calendar Control Program in the United States District Court for the Southern District of New York, 15, 22 (October 1971).

■ The court stands ready to aid the parties in the prompt resolution of the merits of the claim. In accordance with standard practice, as soon as the answer is filed a conference will be scheduled to discuss discovery, motions, settlement, and, if possible, to set a specific date for trial. If there are, in the interim, any difficulties in connection with discovery or if the court's assistance is needed for any other reason, a telephone or face-to-face conference can be arranged by telephoning the court.

■ We note that this motion has, without any useful purpose, expanded several times the thickness of an otherwise slim file with motion papers, memoranda of law and affidavits. Litigants should avoid burdening the courts, themselves and their adversaries with excess paperwork where cheaper and more flexible means exist to accomplish the same objectives. Here a telephone call from one attorney to the other, with or without the court's intervention, probably would have resulted in supplying the defendants with any particular detail they really needed to investigate and file an answer. We add to the file with this opinion with the hope that it will alert the bar to some of the advantages of the more informal procedures now available under the individual calendar system.

The motion is denied with costs.

So ordered.